## RENZIEHAUSEN v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. RENZIEHAUSEN.

Circuit Court of Appeals, Third Circuit.
March 7, 1929.

Nos. 3940, 3941.

Smith, Shaw & McClay, of Pittsburgh, Pa. (Wm. A. Seifert and W. W. Booth, both of Pittsburgh, Pa., of counsel), for appellant.

Mabel Walker Willebrandt, Asst. Atty. Gen., and Sewall Key, Sp. Asst. Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Clark T. Brown, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. These cases are brought here on appeal and cross-appeal on petitions to review a decision of the United States Board of Tax Appeals adjudging deficiencies in the petitioner's income taxes for the years from 1918 to 1922, inclusive, except 1921, for which year there was an overassessment. The deficiency for the year 1918 was $174,159.60; for 1919, $22,495.44; for 1920, $156,362.99; and for 1922, $67,745.39. The overassessment for 1921 was $23,924.57.

Mr. Renziehausen is a resident of Pittsburgh, and during the years in question he was the sole owner of the Large Distilling Company and a half owner of Schuetz, Ren-

ziehausen & Co. The business of these companies was principally that of distilling whisky, which they sold to wholesale dealers under uniform contracts. They also carried on a warehousing business. After the whisky was distilled under these contracts, it was stored in bonded warehouses, and there remained until withdrawn by the owners, who held warehouse receipts for it and paid monthly storage charges therefor.

The assets of these two companies consist of both tangible and intangible property, and the taxpayer contends that he is entitled to a deduction for the obsolescence of this property for the years in question. The intangible property for which a deduction is claimed are trade-marks, trade brands, trade-names, and good will.

Sections 214 of the Acts of 1918 (40 Stat. pt. 1, p. 1067) and 1921 (42 Stat. pt. 1, p. 240) provide "that in computing net income there shall be allowed as deductions: :: * * (8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

The first question is whether or not a deduction in income may be allowed for the obsolescence of the trade-marks, trade brands, trade-names, and good will. There is no dispute as to the value of the intangible property of these companies, and the amount of the deduction, if any, to which they are entitled is not in dispute.

Trade-marks, trade brands, and trade-names are closely related to good will and no attempt has been made to segregate or differentiate them. The Circuit Court of Appeals for the Eighth Circuit in an exhaustive opinion by Judge Kenyon in the case of Red Wing Malting Co. v. Willcuts, 15 F. (2d) 626, 49 A. L. R. 459, held that a deduction for the obsolescence of the good will of a brewing company was not allowable on account of the passage of the National Prohibition Act, because the allowance for obsolescence is limited to such property as is susceptible to exhaustion, wear and tear by use in the business, and good will is not such property.

The clause, "including a reasonable allowance for obsolescence," enlarges the allowance made for exhaustion, wear and tear of property used in the business. The first allowance is made for depreciation resulting from exhaustion, wear and tear, or the use of the property in the business. The second allowance is made for depreciation resulting from obsolescence, or the disuse of the property in the business. The cause of depreciation in the one case is from use, and in the other from disuse. They are antithetical. The property, however, is the same in both cases, and must be such as may be, or has been, subject to exhaustion, wear and tear, and obsolescence. Is good will such property as the Congress had in mind? Does it have the attributes implicit in the language used?

Prior to the Red Wing Case, the Commissioner had decided both ways as to good will: That there could be an allowance for its depreciation, and that there could not be. Since that case, he has uniformly disallowed it. Consequently his action is not persuasive either way. The able dissenting opinions of Mr. Trammell in the Manhattan Brewing Company Case, 6 B. T. A. 952, and of Judge Swan in the case of Haberle Crystal Springs Brewing Co. v. Jesse W. Clarke, Collector of Internal Revenue for the Twenty-First District of New York (C. C. A.) 30 F. (2d) 219, are persuasive. However, we are not convinced of the unsoundness of Judge Kenyon's reasoning in the Red Wing Case, and so hold that obsolescence in this subsection is limited to property which is subject to depreciation by exhaustion, wear and tear, and that good will does not have such attributes and is not such property.

The taxpayer claims deductions from income for the years from 1918 to 1921, inclusive, for obsolescence of the tangible property of the Large Distilling Company. While he may have thought that the distilling business was at an end in 1918, the fact is that this property—plant, machinery, warehouses, and formulæ—was used in distilling medicinal whisky from 1918 to 1921, just as it was before that time. This use continued until the passage of the Willis-Campbell Act on November 23, 1921, and during that period, from 1918 to the passage of this act, in which the taxpayer manufactured 16,654 barrels of whisky, it cannot be said that this physical property was obsolete.

For many years, since 1908, the taxpayer stored whisky which he had manufactured, but did not sell. This whisky aged and became more valuable. He sold it all in 1922. He contends that he is entitled to have the profit made on such "old whisky" taxed as a capital gain at the rate of $12\frac{1}{2}$ per cent., instead of at the usual normal and surtax rates under the provisions of section 206 (a) (6) of the act (of 1921), which provides:

"The term 'capital assets' as used in this section means property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business), but does

not include property held for the personal use or consumption of the taxpayer or his family, or stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year."

It seems to us that this "old whisky" was clearly a part of the stock in trade, and would or should have been properly included in his inventory at the close of any taxable year, just as any other whisky on hand should have been.

The board held that the Large Distilling Company became obsolescent in 1921. The Willis-Campbell Act (42 Stat. 222) was approved and became effective on November 23 of that year. Thereafter the Commissioner refused to issue a permit to the company to distill medicinal whisky, and still refuses. He says that the plant, tangible property other than the bonded warehouses, did not become obsolete in 1921, or it would not have done so, if a permit had been issued to the companies to distill medicinal whisky. As a matter of fact, however, no permit has been issued. But he says that, since it is possible that a permit may be issued at some future date, the plant did not become and is not obsolete. The difficulty with this argument is that it is an assumption contrary to fact. It is entirely hypothetical. The fact is the plant became entirely obsolete on November 23, 1921, and the allowance made by the board for depreciation on account of obsolescence, which as to amount is not disputed, was justified by the facts in the case.

The board found that, because of the type of construction of the four warehouses of the taxpayer, they cannot be adapted or converted to any other purpose than the storage of whisky in bulk. They have a total capacity of 55,000 barrels, which did not exceed the normal needs of the business. Because of restrictions imposed by the "Food Control" Acts upon the use and transportation of cereals and grains for beverage purposes, no whisky was manufactured in 1917, from May until December 31. On January 1, 1918, there were stored in the warehouses 35,365 barrels of whisky. The board found that the total capacity of the warehouses was needed in the petitioner's business. The board further found that:

"The deduction for obsolescence, we believe, like those for depreciation and depletion, should be based upon actualities, as nearly as that may be possible; and this is necessary if the deduction is to be a 'reasonable' one as the statute contemplates. To require that the entire obsolescence should be spread and deducted from income as the remaining 27,393 barrels of whisky, at the close of 1921, are withdrawn, would result in postponing the entire obsolescence deduction to years subsequent to 1921, when as a matter of fact obsolescence was sustained in that year to the extent of the reduction in the useful and valuable capacity of the warehouses. In view of the foregoing, it is our opinion that the petitioner is entitled to a deduction, for 1921, for obsolescence of the warehouses, in an amount representing the same proportion of the depreciated cost as the number of barrels representing the reduction in the useful and valuable capacity, plus the number of barrels withdrawn from November 24, to December 31, 1921, to wit: 27,607, bears to 55,000; and that for 1922 petitioner is entitled to a like deduction based upon the proportion which the number of barrels withdrawn during that year, to wit, 1,761, bears to 55,000, or in such manner that when the entire amount of whisky has been withdrawn the entire cost of the buildings shall be returned by way of obsolescence and depreciation."

The respondent says that this conclusion is unsound for the reason that:

"If the Commissioner at the present time should issue a permit for the manufacture of medicinal whisky, the taxpayer's warehouses could be used for the storage of that whisky just as they were used in the taxable years. Certainly it cannot be said that the taxpayer suffered a loss or obsolescence of warehouses which may subsequently be used as effectively as before the passage of the Willis-Campbell Act."

This contention is purely hypothetical, is based upon possibilities and assumptions, up to this time, contrary to fact, and may never in the life of the taxpayer become a fact. It is really no answer to the board's conclusion, which is hereby affirmed on this point.

A decree may be entered in accordance with the above conclusions, and costs of the respective petitions for review shall be charged against the respective petitioners.