**WILLIAMSON v. BOWERS.**

Civ. A. No. 2525.

United States District Court
E. D. South Carolina,
Orangeburg Division.

Dec. 15, 1950.

Crum & Crum, Denmark, S. C., for plaintiff.

Ben Scott Whaley, U. S. Atty., Russell D. Miller, former Asst. U. S. Atty., Charleston and Florence, S. C., for defendant.

Rhodes S. Baker, of Tax Division, Department of Justice, Washington, D. C., for the Government.

WARING, District Judge.

The plaintiff has brought suit claiming a refund on income tax paid by him and the matter involved is whether certain transactions in regard to the disposition of an amount of cotton should be regarded as ordinary business transactions in which the profits must be treated as annual income or whether the transaction comes within the purview of the statute which allows the treatment of certain transactions as "capital assets". If the taxpayer's contention is correct that the cotton involved was held by him as contemplated by the statute for the purpose of an investment and is not within the exceptions contemplated by the statute, then he is entitled to treat the profit made on the sale of this cotton as a gain on capital assets and the rate of tax to be

paid will be materially lower than that on ordinary income, and he is entitled to make a deduction and receive a refund.

The plaintiff lives in the town of Norway, County of Orangeburg, South Carolina, and the defendant is the Collector of Internal Revenue and resident within this district. There is, therefore, no question as to the jurisdiction of the Court, and practically all of the facts are without dispute, and most of them are set forth in a stipulation filed by the attorneys.

The testimony of the plaintiff was taken as to the kind of business in which he is engaged and particularly the manner of handling the cotton in question and his intention in regard to the investment feature of the same. The Findings of Fact, which will be filed, will more definitely and chronologically set forth the details of these matters, and for the purpose of this discussion, a very brief summary of the facts involved may be made.

The plaintiff is engaged in several lines of activity. He testified that he does some farming, runs a cotton gin, operates a warehouse that has a Federal license, issues warehouse certificates from this warehouse, buys and sells cotton, most of it right at his gin-house and on the platform of the same. Most of the cotton that he buys is purchased with the view of a quick turn-over and is sold shortly thereafter. He testifies that, at times, however, he buys some cotton and sets it aside to be held for long term investment. His dealings in this respect are somewhat limited due to the fact that it requires considerable capital to carry such an investment. If and when such cotton is purchased to be held for some future sale, he stores the same in a bonded warehouse (naturally he uses his own warehouse, saving the cost of paying storage) and on the receipts issued by the warehouse, he is able to borrow sufficient money from a bank to finance the transaction. It ap-

pears that in 1941, he purchased considerable cotton and of the amount purchased, he states that he intended to set aside and did set aside 250 bales to be held for future disposition. These were sold in 1943 and a profit received. Was this profit to be treated as a gain on capital assets or was it to be treated as ordinary income and subject to the regular rates? That is the narrow question submitted.

The term "capital assets" is defined in the Internal Revenue Code, Section 117 (a) (1), 26 U.S.C.A. § 117(a) (1), as follows:

> "Property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer of other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *."

The plaintiff contends that these 250 bales of cotton were held by him as an investment and for some future disposition. On the other hand, the Government contends that these bales of cotton were merely part of the ordinary stock in trade of the taxpayer and were held by him primarily for sale to customers in the ordinary course of his trade or business which was primarily that of dealing in cotton. As heretofore stated, the facts are not seriously in dispute and the real question is what was the intent of the taxpayer. The Government takes the position that the facts must speak for themselves, and this Court cannot say that the 250 bales in question were not a part of his ordinary cotton dealing merely because he happened to wait a considerable length of time before finding a favorable market, and the fact that he called in buyers and took bids and accepted the highest offer shows that it was just an ordinary transaction

in handling cotton in the course of his business and dealing with his ordinary customers. To off-set this, the taxpayer points out the length of time (running from 1941 to 1943) when these particular bales of cotton were held. It is also shown in evidence that cotton stored in this warehouse was actually identified. Each bale of cotton was numbered and tagged and entry was made on the books designating it and the person from whom it was purchased and who was the owner. And so each and every one of these bales of cotton could be identified and they were not merged or consolidated and made a part of a general batch of goods held for sale. The taxpayer earnestly contends that these bales of cotton were separately held being identified as above described and that he had no intention of turning them over in the usual course of trade but that from his experience and study of market and business conditions especially as affected by war in Europe, he believed that there would be a greater demand for cotton and that it would be profitable to buy, set aside, and store cotton for future sale. He testified that he limited this investment to 250 bales because of the large financial arrangements necessary to carry any considerable quantity of cotton and that while he was buying and selling many other bales of cotton, he was able financially to set aside this amount only as a future investment. It is true, of course, that cotton in storage produces no dividends or income and that fact is urged by the Government as a reason why you cannot look on stored cotton as investment. But the same argument might be made against many capital assets. People frequently buy extensive tracts of land believing that future development will make them more valuable:

and many securities which are nondividend paying or bonds which have defaulted in their interest are purchased by shrewd investors and put aside in their portfolios in the hope of gains in the nature of increase in capital assets. And the taxpayer in this case maintains that that can equally be true of bales of cotton, and he categorically states that that was his intention and motive in the purchase and holding of the 250 bales in question.

Counsel have argued the case at some length before me and have filed interesting briefs. None of them have been able to cite any decision that would seem directly based upon exactly the same question here involved. There are numerous decisions affecting land transactions and there are numerous decisions affecting investments in stocks and bonds. Undoubtedly, all of these are frequently treated as capital assets. I have examined a large number of cases. Some of the more illuminating will be found in the marginal note.[1]

Applying the law as considered in cited cases, I feel that we must be governed by the true intent and motive of the taxpayer. The physical facts as found, most of them being actually stipulated, might be held to point to one of two conclusions: (1) that the intention of the taxpayer was to hold the property for capital gains, or (2) that he merely waited longer in disposing of these bales of cotton in the ordinary course of his trade. On the other hand, we have the positive testimony under oath of the man who states that he purposely and intentionally set aside this designated cotton, that he was convinced that it was a good investment, and that it was limited only by his financial resources, and that he definitely determined

1. Schafer v. Helvering, 299 U.S. 171, 57 S.Ct. 148, 81 L.Ed. 101; Helvering v. Fried, 299 U.S. 175, 57 S.Ct. 150, 81 L. Ed. 104; Gruver v. Commissioner, 4 Cir., 142 F.2d 363; Commissioner of Internal Revenue v. Stevens, 2 Cir., 78 F.2d 713;

U. S. v. Chinook Inv. Co., 9 Cir., 136 F. 2d 984; Foran v. Commissioner, 5 Cir., 165 F.2d 705; Fahs v. Crawford, 5 Cir., 161 F.2d 315; Harriss v. Commissioner, 2 Cir., 143 F.2d 279.

that he would hold the cotton in question to be sometime turned into cash when this capital investment had increased sufficiently to justify and warrant his doing so. I feel that the weight of the evidence is in his favor and that there is nothing shown to gainsay this, and I see no reason for casting out his testimony and saying that he is not to be believed. The facts do not contradict him and, as a matter of fact, some of the facts strongly corroborate this idea. He had cotton coming in and going out of his warehouse, but these particular 250 bales, each identified by name and number, remained there between 1941 and 1943 and that is mute evidence corroborating his statement that he put them aside for some future market and as a part of his capital with the hope of eventually realizing a substantial gain in his capital by reason of a future sale. The plaintiff was not engaged only in this one activity of buying and selling cotton, but he had many lines of endeavor, and he has a right to engage in investments in cotton even though he is a dealer in the ordinary sense of buying and selling cotton. Certainly it cannot be gainsaid that a broker in stocks and bonds is allowed to make investments in stocks and bonds provided he intends that they are separate and segregated from his ordinary transactions. It is true that the custom in the brokerage business is to make entries showing such separation in appropriate books, but in this case, the taxpayer points out that these bales of cotton were definitely designated, placed in the warehouse and could, at any time, be identified and were not in any way mingled with the other goods therein.

I feel that, in view of this positive testimony, the plaintiff has sustained the burden of proof by the greater weight or preponderance of the evidence and that he is entitled to prevail.

Appropriate Findings of Fact and Conclusions of Law and an Order for judgment will be filed.