**WEAVER v. HENSLEE.**

Civ. No. 1523.

United States District Court
M. D. Tennessee, Nashville Division.

March 25, 1954.

708

Lucius E. Burch, Jr., and Bailey Brown, Memphis, Tenn., for plaintiff.

Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., and Jerome Fink, Atty. Department of Justice, Tax Division, Washington, D. C., for defendant.

DAVIES, District Judge.

## Findings of Fact

1. Virginia E. Weaver, the plaintiff, is the wife of John C. Weaver, is a housewife, and has four children.

2. During a part of the years involved, plaintiff was a limited partner in two limited partnerships, Central States Cotton Co. and Weaver, Ozier Co., which were cotton merchandising or shipping firms, but her only interest and the only part she took in these firms was as an investor. The cotton involved in this case had no connection with these limited partnerships.

3. Plaintiff's husband, John C. Weaver, was a partner in a cotton merchandising or shipping firm known as Fulton-Weaver Co., in which Mr. Weaver, Jack Fulton, Sr., and Jack Fulton, Jr., were general partners, but in which plaintiff had no interest.

4. In the spring of 1945, plaintiff and Dudley H. Fulton, wife of Jack Fulton, Sr., on the advice of their husbands, decided to purchase some baled or "spot" cotton.

5. Plaintiff and Mrs. Fulton, on or about May 3, 1945, made arrangements for a loan with a bank in Memphis, and plaintiff delivered to the bank her own securities as margin for the loan, the

two women becoming solely liable on the note given to the bank.

6. With the credit thus created, plaintiff and Mrs. Fulton purchased 2,435 bales of cotton, the warehouse receipts from which were also pledged to the bank. This cotton was sold on or about November 12, 1945.

7. Plaintiff and Mrs. Fulton also purchased 2,747 bales of cotton on February 26, 1946, which were sold on August 28, 1946, and on March 5, 1946, they purchased 1,007 bales of cotton, which were sold on February 4, 1947. The financing of these second and third lots of cotton was handled in substantially the same manner as the financing of the first lot.

8. Plaintiff had never purchased any baled cotton prior to these years and has purchased none since.

9. The purchase and sale of the first and second lots of cotton and the purchase of the third lot were effected through brokers, and commissions were paid to the brokers by plaintiff and Mrs. Fulton. The third lot was sold by a broker who charged no commission but added a small markup to the price. The ledger sheet on plaintiff's cotton transactions were kept at Fulton-Weaver Co., but were kept entirely separate from the books of that firm.

10. None of the cotton was hedged, which is customary in the case of cotton shippers, and the cotton was stored in public warehouses.

11. It is stipulated that all of the cotton was held for more than six months.

12. Plaintiff's purpose in purchasing and holding the cotton was to realize a profit after an expected rise in the cotton market.

13. The business of a cotton merchandiser or shipper requires a great deal of highly technical knowledge, none of which plaintiff had, and plaintiff devoted very little time to the handling of these transactions.

14. Plaintiff did not belong to the Memphis Cotton Exchange, had no license as a cotton merchant, did not advertise or otherwise hold herself out to the public as being in the cotton business, all of which are customary in the case of persons in the business of merchandising cotton.

15. Plaintiff had no customers in the usual or ordinary sense of the word, and she had no good will, nor did she attempt to establish any good will.

16. It is stipulated that the defendant collected the taxes involved in this suit with probable cause and under the direction of the Secretary of the Treasury.

17. Plaintiff did not hold the cotton involved in this case primarily for sale to customers in the ordinary course of her trade or business.

Conclusions of Law

1. This court has jurisdiction of this cause by virtue of the Internal Revenue Code.

2. Gain from the sale or exchange of a capital asset held for more than six months is a long term capital gain. I.R.C. § 117(a)(4), 26 U.S.C.A.

3. A capital asset is defined in I.R.C. § 117(a)(1) as follows:

"The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(A) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".

4. Property such as baled cotton which does not produce income while being held may be a capital asset. See: as to land, Regs. 111, § 29.112(b)(1)–1, Fahs v. Crawford, 5 Cir., 161 F.2d 315, Houston Deepwater Land Co. v. Scofield, D.C., 110 F.Supp. 394; as to jewels, Reynolds v. Commissioner, 1 Cir., 155 F.2d 620. No reason has been suggested, and the Court finds none to accord any different treatment to any commodity that may otherwise qualify for

capital gains treatment. That cotton, grain and other commodities may be the subject of long term capital gains is indicated by the plain language of the statute I.R.C. § 117(a)(1). Also this is consistent with the rulings of the Commissioner of Internal Revenue. IT 3919, C.B. 1948–2, page 67; and the case of Williamson v. Bowers, D.C.S.C., 120 F. Supp. 704, decided December 15, 1950, which involved baled cotton as here.

■ 5. To be excluded from capital assets status under the above quoted provision, property must not only be held for sale in the ordinary course of taxpayer's trade or business, but it also must be held primarily for sale to customers in that trade or business. Fahs v. Crawford, 5 Cir., 161 F.2d 315, and Burnett, 40 B.T.A. 605.

■ 6. To be held to be in the business of selling a particular kind of property, taxpayer must devote time and effort to the transactions with substantial frequency and continuity and hold himself out to the public as being in that business. Phipps v. Commissioner, 2 Cir., 54 F.2d 469; Fahs. v. Crawford, 5 Cir., 161 F.2d 315; Victory Housing No. 2, Inc. v. Commissioner, 10 Cir., 205 F.2d 371; and Farley, 7 T.C. 198.

■ 7. Property is not held for sale to customers unless taxpayer has customers and holds the property for the purpose of selling it to those customers rather than for some other purpose, such as to receive income from the property, or for a rise in market price of the property, or for use in his business. Houston Deepwater Land Co. v. Scofield, D.C., 110 F.Supp. 394; Williamson v. Bowers, D.C.S.C., 120 F.Supp. 704; Kemon, 16 T.C. 1026; Latimer-Looney Chevrolet, Inc., 19 T.C. 120.

■ 8. The baled cotton involved in this case was, as a matter of law, not held by plaintiff primarily for sale to customers in the ordinary course of her trade or business.

Judgment accordingly.