UNITED STATES of America,
Appellant,

v.

C. R. BONDURANT, Appellee.

No. 13013.

United States Court of Appeals
Sixth Circuit.

May 24, 1957.

Melvin L. Lebow, Washington, D. C., Charles K. Rice, Lee A. Jackson, Hilbert P. Zarky, Washington, D. C., Millsaps Fitzhugh, Memphis, Tenn., on brief, for appellant.

Bailey Brown, Memphis, Tenn., Lucius E. Burch, Jr., Burch, Porter, Johnson & Brown, Memphis, Tenn., on brief, for appellee.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellee brought this action in the district court to recover the sum of $21,409.78, plus interest, claimed by him to be an overpayment of income taxes for the fiscal year ending August 31, 1951. The jury returned a verdict for the appellee, upon which judgment was entered, followed by this appeal.

The only evidence was on the part of the appellee, the Government offering no witness. It showed the following undisputed facts. Appellee has been in the business of cotton shipping since 1933. A cotton shipper is principally a buyer and seller of cotton, the purchaser paying a fixed amount per bale above what it costs a shipper to purchase the cotton. This differential is the shipper's compensation. Appellee carried on his business under the firm name of Reid Bondurant & Company, of Memphis, Tenn., which was wholly owned by him. During the entire period in issue he did not cease carrying on this business.

In addition to dealing in cotton, appellee had bought and sold land and invested and speculated in different commodities, including corn, cottonseed oil, lard, oats and rye. He knew that doctors and lawyers invested in cotton and took capital gains upon its sale. In 1950 appellee decided to buy and sell some cotton in such a manner as to make any profit resulting therefrom a capital gain instead of ordinary income. He consulted his tax counsellor, who advised him that it could be done with any commodity, but since appellee was in the business of buying and selling cotton, the transactions would have to be handled in a certain way so as to earmark them as individual purchases separate from the taxpayer's business. This would require, among other things, payment by personal check, maintenance of separate records, individual financing with the bank separate from the firm's financing, keeping the "investment" cotton physically separate from the business cotton, and holding without sale for the required period of time.

Using this advised procedure, appellee made purchases of so-called "investment" cotton, held it for the required length of time before selling, and reported the profits as capital gains. He purchased the "investment" cotton, along with business cotton, from California, using the same broker for the purchase of all California cotton. The "investment" cotton was stored in a public warehouse at Memphis, while his business cotton was stored at Galveston. The "investment" cotton was not displayed for sale on appellee's sample tables and was not for sale during the holding period. It was held and sold by him in the same lots in which it was purchased and was not broken down and classed out by him for purposes of sale. Appellee testified that none of it was hedged, as was the usual practice with business cotton; that at the time he purchased the cotton in question, he purchased it for investment; that he expressed and carried out that intention by records and statements to and arrangements with his banker; that it was never held by him for sale to customers in the regular or ordinary course of his business; that it was not shown to his customers, and that his intention to hold it for investment persisted up to the moment it was sold.

It is the Government's contention, in accord with the Commissioner's ruling, that the sale of the so-called "investment" cotton was not the sale of a capital asset and that the profit resulting therefrom was ordinary income fully taxable rather than a capital gain. Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29, rehearing denied 350 U.S. 943, 76 S.Ct. 297, 100 L.Ed. 823; Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232. Appellee contends that the profit on this part of his business resulted from the sale of a capital asset and was taxable as a capital gain rather than ordinary income. Section 117, Internal Revenue Code of 1939, 26 U.S.C.A. § 117.

Section 117, Internal Revenue Code of 1939, provides that in the case of a taxpayer, other than a corporation, only

50 per centum of the gain or loss recognized upon the sale of a capital asset shall be taken into account in computing net income if the capital asset has been held for more than 6 months. Section 117(a) provides: "The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade of business; * * *."

At the close of appellee's evidence, the Government moved for a directed verdict. It contended that it was shown by appellee's own evidence that the only purpose in setting up separate accounts was to reduce the amount of taxes he would have to pay in his business, and, under the circumstances, the form of the transaction must be disregarded. This motion was denied, as was also the Government's motion for judgment notwithstanding the verdict or for a new trial. These rulings are challenged by this appeal.

The district judge, in charging the jury, gave the definition of "capital assets" as set out in the Internal Revenue Code. He explained that it excluded all goods or stock in trade of the taxpayer or other property which would be included in the business inventory of the taxpayer, or property held by him primarily for sale to customers in the ordinary course of business. He explained that there was no fixed formula for determining whether the cotton sold by the taxpayer was held by him primarily for sale to customers in the ordinary course of his trade or business, or was held by him as a capital asset, but that each case must turn upon its own facts and circumstances. He pointed out certain recognized tests which the jury should consider as being helpful guides. He instructed the jury that a taxpayer cannot convert property into a capital asset merely by delaying sale until a future date, nor can he, by injecting a fictitious element of speculation into a transaction, gain a tax advantage to which he was not entitled; that a taxpayer cannot convert property held primarily for sale to customers in the ordinary course of his business into property not held for sale to customers, or into property held as an investment merely by deferring the sale for six months. He included in his instructions the following specific charge, which the Government contends was error. "* * * the Court instructs you that a taxpayer, though he happens to be engaged in the cotton business, may, under the Revenue statutes and in good faith, purchase and segregate cotton and carry same in a separate investment account or as a capital asset with the intention of seasonably disposing of it and being taxed on any profits, on the basis of capital gains. He may, in good faith, do this to minimize his taxes." This in effect raises in a different way the same question presented by the court's refusal to direct a verdict for the Government. Other instructions requested by the Government and refused by the District Judge pertained to the same issue and were sufficiently covered by the instructions given.

■■■ If the Government's motion for a directed verdict was properly overruled and the case rightly submitted to the jury, we find no error in that portion of the instructions complained of. The general principle is well settled that a taxpayer has the legal right to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, and that the taxpayer's motive to avoid taxation will not establish liability if the transaction does not do so without it. The Government is not prevented from going behind the form which the transaction takes and ascertaining the reality and genuineness of the component parts of the transaction in order to determine whether the transaction is really what it purports to be or is merely a formality

without substance which for tax purposes can and should be disregarded. Chamberlin v. Commissioner, 6 Cir., 207 F.2d 462, 468, certiorari denied 347 U. S. 918, 74 S.Ct. 516, 98 L.Ed. 1073; United States v. Cummins Distilleries Corporation, 6 Cir., 166 F.2d 17, 20. It is for the trial court, upon consideration of the entire transaction, to determine the factual category in which a particular transaction belongs. United States v. Cumberland Public Service Co., 338 U.S. 451, 456, 70 S.Ct. 280, 94 L.Ed. 251. The instructions correctly embodied these legal principles. The jury was properly told that good faith on the part of the taxpayer was essential and that the substance of the transaction was controlling over its form.

▪▪▪ A taxpayer may engage in more than one business with the clear, legal right to conduct each business separate and apart from the others, with the resulting tax consequences as they normally apply. Clearly, a doctor, a lawyer, an insurance agent, a druggist, a wholesale or retail grocer, or other business man can earn income in his regular profession or business which will be taxable as ordinary income, and also buy, hold and sell capital assets, cotton or other property, and return the profit resulting from a sale as a capital gain, taxable as such. Similarly, a man engaged in buying and selling cotton as a regular business, can also engage in the purchase and sale of capital assets, such as real estate, securities, and various commodities other than cotton, with resulting capital gains. We do not see any legal objection to his also including in his purchase and sale of capital assets purchases of cotton, *provided* they are *in fact* capital assets and handled as such separate and apart from his regular business. Whether they are actually capital assets, be they cotton, lard, oats or any other commodity, is a question of fact, depending upon all the facts in the case, including intention and good faith. Admittedly, the appellee in the present case had a heavy burden in proving to the satisfaction of the jury that

his so-called "investment" cotton was actually a capital asset, but we do not think he was barred as a matter of law from attempting to do so, merely because he was also engaged in the business of a cotton shipper. In our opinion, the evidence was sufficient to take the case to the jury on this factual issue and to sustain the verdict in favor of the taxpayer. Williamson v. Bowers, D.C.E.D. S.C., 120 F.Supp. 704; Weaver v. Henslee, D.C.M.D.Tenn., 120 F.Supp. 707; Van Suetendael v. Commissioner, 2 Cir., 152 F.2d 654; Faroll v. Jarecki, 7 Cir., 231 F.2d 281, certiorari denied 352 U.S. 830, 77 S.Ct. 45, 1 L.Ed.2d 51; Carl Marks & Co., 12 T.C. 1196, 1202; Stern Bros. & Co., 16 T.C. 295, 313; Hammitt v. Commissioner, 3 Cir., 79 F.2d 494; Flora v. United States, D.C.Wyo., 142 F.Supp. 602. Compare: Williamson v. Commissioner, 4 Cir., 201 F.2d 564, 566, certiorari denied 345 U.S. 970, 73 S.Ct. 1112, 97 L.Ed. 1387; Davis v. Hightower, 5 Cir., 230 F.2d 549.

It follows as a necessary corollary that if the sale of the "investment" cotton had resulted in a loss instead of a profit, such loss would have been a capital assets loss, taxable as such rather than as constituting an ordinary business loss deductible in full. The transaction is a capital asset transaction regardless of whether it results in a gain or loss. The taxpayer by his actions in the matter was committed taxwise to that position.

The factual situations in Corn Products Refining Co. v. Commissioner, supra, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29, and Renziehausen v. Commissioner, 8 B.T.A. 87, 101–102; 3 Cir., 31 F.2d 675, which are relied upon by appellant, are materially different from those in the present case. In each of those cases the transaction under consideration constituted an integral part of the taxpayer's manufacturing business, in that each was one step in a series of successive steps used in the manufacture of the finished product which the taxpayer ultimately sold in the regular course of business. In addition, the trial court had previously found the fact issue

against the taxpayer, which the appellate court affirmed on review. In the present case the fact issue has been decided by the trial court in favor of the taxpayer. See: United States v. Cumberland Public Service Co., supra, 338 U.S. 451, 456, 70 S.Ct. 280, 94 L.Ed. 251.

The judgment is affirmed.