245 F.2d 765
 George D. PATTERSON, District Director of Internal Revenue for the District of Alabama, Appellant,
v.
C. B. HIGHTOWER, Jr., and Martha T. Hightower, Appellees.
C. B. HIGHTOWER, Jr., and Martha T. Hightower, Appellants,
v.
George D. PATTERSON, District Director of Internal Revenue for the District of Alabama, Appellee.
 No. 16527.
 United States Court of Appeals Fifth Circuit.
 June 28, 1957.
 
 Walter Akerman, Jr., Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Kenneth E. Levin, Melva M. Graney, Ellis N. Slack, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., W. L. Longshore, U. S. Atty., Birmingham, Ala., for appellant.
 Winston B. McCall, William S. Pritchard, Birmingham, Ala., Pritchard, McCall & Jones, of counsel, Birmingham, Ala., for appellees.
 Before RIVES, JONES and BROWN, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 The evidentiary facts which present the question we are to decide are neither complex nor conflicting. The case involves the Federal income tax liability of C. B. Hightower, Jr. and Martha T. Hightower, husband and wife, for the years 1950, 1951 and 1952, for which they filed joint returns. All the questioned income was produced by the husband. In our further references he will usually be called the taxpayer. He was a resident of York, Alabama, where he operated a general store, a cotton gin and cotton warehouses. He had substantial land holdings in the area, a part of which was rented for the growing of cotton on a share crop basis. He operated the only gin in York and was the only buyer of cotton in that community. He purchased each year cotton in comparatively small lots but aggregating large quantities. Sometimes these purchases would be made when the cotton was ginned and on other occasions it would be bought while in storage at the taxpayer's warehouse. Sometimes the price of the cotton bought by the taxpayer would be applied, to the extent required, in the discharge of the grower's indebtedness to the taxpayer for merchandise purchased at his store. The sales of cotton were not numerous and required but little of the taxpayer's time. Bookkeeping records of the taxpayer's cotton transactions were kept separate from his other business activities. His cotton was not included in his mercantile inventory. He employed no salesmen, issued no sales circulars and did no sales advertising. He spent, so he estimated, not more than a day and a half during each of the years involved in making sales of cotton.
 
 
 2
 During the years 1950 through 1952 all the cotton sold by the taxpayer was on call contracts. When such a sale is made the title to the cotton and the possession or right of possession passes to the buyer. The seller has the right to have the amount which he is to be paid fixed by the market price, plus or minus an agreed number of points, at a future date to be determined or "called" by the seller. In such transactions the seller gains the advantage of rises in the market between the time of the contract and the date of the call. The seller has the risk of market declines as well as the benefit of market rises and is required to keep the contract margined. The taxpayer, in his income tax returns, reported his profits from the sale of cotton as long-term capital gains realized in the respective years when the sales prices were fixed by the taxpayer's call. The Commissioner of Internal Revenue took the position that the cotton sales were of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business", and hence excluded from capital gains treatment by the provisions of 26 U.S. C.A., I.R.C.1939, § 117(a) (1) (A). Deficiency assessments were made by the Commissioner, the amounts assessed were paid, and an action was brought by the taxpayer against the district director for recovery of these amounts so paid. The cause was tried to a jury.
 
 
 3
 The director and the taxpayer each moved for a directed verdict. The district court held that, in ascertaining the holding period within Section 117 so as to determine whether the cotton had been held for more than six months, only the time between the time of the purchase of the cotton and the time of its disposition by transfer of possession could be considered, and the further period prior to the determination of the price by exercising the call could not be added. Under this holding, none of the cotton for which the taxpayer received payment in 1952 had been held for six months, and the district court denied recovery of the taxpayer's claim for that year. The district court held that the call contracts were not capital assets of themselves but merely incidences of the sale of the cotton, fixing the price and the time of its payment. Some of the cotton for which the taxpayer was paid in 1950 and 1951 had been held for less than six months, and the district court denied any recovery of the tax paid with respect to its sale. The court submitted to the jury the question whether the cotton sold by the taxpayer during 1950 and 1951 was held by him primarily for sale to customers in the ordinary course of trade or business. The jury returned an answer that it was not so held. Accepting the verdict of the jury the court entered judgment giving long-term capital gain treatment as to the cotton held in physical possession for more than six months, and denied relief as to the rest of the taxpayer's claim.
 
 
 4
 The district director and the taxpayer have both appealed. The director contends that the undisputed evidence admits of no other conclusion than that the cotton sold on call contracts was held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. The taxpayer urges that a verdict for him should have been directed on the undisputed evidence; that the call contracts were contractual rights in cotton futures and as such were capital assets upon which long-term capital gains were realized; and that the cotton sales were made in the years he placed the cotton on call rather than in the years the call was exercised, or in the alternative, that the period of holding the cotton did not terminate at the time it was placed on call and possession delivered but such period continued until the exercise of the call.
 
 
 5
 Both the director and the taxpayer assert that the district court erred in not directing a verdict on undisputed evidence; each, of course, insisting that the verdict should have been directed against the other. It is true that the evidentiary facts are without dispute in any material respect. However, the question as to whether property was held primarily for sale to customers in the ordinary course of trade or business is one which, in many cases, requires a choice between inferences which may be drawn from undisputed evidence. This is such a case. The choosing of the correct inference to be drawn is a process of finding of an ultimate fact and is within the proper province of a jury. Jackson v. King, 5 Cir., 1955, 223 F.2d 714. Some of the criteria of the test are set forth in Smith v. Dunn, 5 Cir., 1955, 224 F.2d 353. And see annotation 46 A.L.R. 2d 615. In a quite similar situation the Court of Appeals of the Fourth Circuit affirmed the decision of the Tax Court, 18 T.C. 653, taxing profits on sales of cotton as ordinary income. In that case there was considerably more sales activity than in the case before us. Williamson v. Commissioner of Internal Revenue, 4 Cir., 1953, 201 F.2d 564. For different years and upon different facts the District Court for the Eastern District of South Carolina held that the same taxpayer was entitled to capital gains treatment with respect to a portion of the cotton sold by him during the years in question. Williamson v. Bowers, D.C.E.D. S.C.1950, 120 F.Supp. 704. A similar situation where a similar result was reached is presented by United States v. Bondurant, 6 Cir., 1957, 245 F.2d 265.
 
 
 6
 Hightower made one sale of cotton in each of the years 1950 and 1951. It would be difficult to find a case involving Section 117 where the taxpayer indulged in less sales activity and devoted less time to selling than this case. The buying and selling of cotton were separate transactions from the taxpayer's mercantile operations. He did not hold himself out as having cotton for sale. These and some of the other evidentiary facts go into the scales on the side of the taxpayer. Other evidentiary facts lend themselves to the result for which the director contends. The same taxpayer was before us in an earlier case which was decided under the statute of limitations. There it was said that the factual background made a strong case to support the government's contention that the property was held for sale to customers in the ordinary course of business. Davis v. Hightower, 5 Cir., 1956, 230 F. 2d 549. Such comment might also be made here. Yet the question was for the jury and we cannot say it was incorrectly answered by the jury.
 
 
 7
 The taxpayer asserts that the call contracts liquidated in 1950 and 1951 were contractual rights in cotton futures and hence capital assets, so that long-term capital gains resulted upon the exercise of the call. Commodity futures contracts, not acquired for hedging purposes or as a gambling transaction, are capital assets, and profits from the disposition of such contracts, after being held for the required period, are to be taxed as long-term capital gains. Commissioner of Internal Revenue v. Covington, 5 Cir., 1941, 120 F.2d 768; Commissioner of Internal Revenue v. Farmers & Ginners Cotton Oil Co., 5 Cir., 1941, 120 F.2d 772; Faroll v. Jarecki, 7 Cir., 1956, 231 F.2d 281; G.C.M. 17322, XV-2 Cum.Bull. 151. Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 76 S.Ct. 20, 100 L. Ed. 29, is not in conflict with this doctrine. But the doctrine does not have any application in this case. The taxpayer bought cotton, owned cotton and sold cotton. Upon the exercise of the call by which the price was fixed, he received payment for cotton. He did not make any purchases of cotton futures and did not dispose of cotton futures. As was held in Williamson v. Commissioner of Internal Revenue, supra, the taxpayer cannot, by deferring the determination of the sales price, change the character of the transaction.
 
 
 8
 Finally, the taxpayer says that the sales of cotton were made and the gains realized during the years when the cotton was delivered and placed on call and not during the tax years here involved in which the calls were exercised and the sales proceeds were received; or, in the alternative, that the holding period did not terminate when the cotton was placed on call and delivered but continued until the call was exercised. This latter theory, if adopted, would give the taxpayer the long-term capital gains treatment which the district court refused with respect to the cotton delivered and placed on call within the period of six months after it was purchased. The legal effect of the transaction is that the title passes to the buyer on delivery of the cotton and the seller has the right to designate the date on which the prevailing market shall fix the price and to have payment when the price has been thus fixed. The sale is made upon delivery, and this is nonetheless true because the amount of the obligation of the buyer has not been ascertained. 1 Williston on Sales 434, § 167; McConnell v. Hughes, 29 Wis. 537; Phifer v. Erwin, 100 N.C. 59, 6 S.E. 672; Daniel v. Hannah, 106 Ga. 91, 31 S.E. 734. The period during which property is held ordinarily terminates when title passes. 3 Mertens Law of Federal Income Taxation 742, § 22.21. Where there is an uncertainty as to the amount to which the taxpayer is entitled, there can be no constructive receipt. 2 Mertens Law of Federal Income Taxation, Ch. 10, p. 12, § 10.04. The amount payable to the taxpayer not being certain until the time of the exercise of the call, the profits from the sales of his cotton were income to him during the year in which they were received.
 
 
 9
 We find no error in the judgment of the district court. Its judgment is
 
 
 10
 Affirmed.