LLOYD M. SHUMAKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shumaker v. Commissioner
Docket No. 6771-76.
United States Tax Court
T.C. Memo 1979-71; 1979 Tax Ct. Memo LEXIS 453; 38 T.C.M. (CCH) 302; T.C.M. (RIA) 79071; March 5, 1979, Filed *453 Held, petitioner determined to have ordinary income and not capital gains from sale of grain grown on his farm. Held further, proper allocation of farm sale price to depreciables determined. Held further, basis of farm equipment determined. Lloyd M. Shumaker, pro se. Kenneth W. McWade, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined deficiencies in petitioner's income taxes for the following years and in the following amounts: Taxable Year Ended
Deficiency
December 31, 1972 $ 971.00
December 31, 1973
6,624.00
A variety of issues, including the capital or ordinary income quality of petitioner's receipts from certain grain sales made by him and the proper allocation of the sale price of his farm, are presented. FINDINGS OF FACT Some of the facts have been stipulated and are so found. [1] The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Lloyd M. Shumaker resided at Soap Lake, Washington at the time he filed his petition *455 herein.Petitioner's Federal income tax returns for the years in issue were filed with the service's western regional service center at Ogden, Utah. Petitioner was at all times relevant hereto on a cash basis of accounting. Petitioner filed his petition herein on July 13, 1976. On April 15, 1977 petitioner mailed an amended income tax return for his taxable year 1973 which was received on April 19, 1977. By this amended return petitioner claimed a refund for his taxable year 1973 in the amount of $ 428. [2]
Petitioner was for many years a wheat farmer on a farm located near Soap Lake. In August of 1972 he leased his farm to a Mr. Cox. On February 15, 1973 petitioner sold his farm to Mr. Cox for $ 135,000. In connection with this sale the parties executed a closing statement dated February 15, 1973 wherein the total sales price for the farm and farm machinery was allocated $ 113,000 to the *456 farm land and $ 22,000 to the farm machinery. Prior to leasing his farm to Mr. Cox petitioner had harvested the farm's 1972 wheat crop. It was petitioner's usual practice to sell immediately so much of his yearly crop as was required to meet that year's financial obligations and store any excess grain for sale in the next year. In accordance with this practice petitioner stored a portion of his 1972 wheat crop with the Wilson Creek Union Grain & Trading Company (Wilson Creek). Petitioner stored the following amounts of wheat on the following dates: Date stored
Gross Bushels
Net Bushels
July 27, 1972
3,219.33
3,203.24
July 30, 1972
737.45
730.07
August 5, 1972
8,398.93
8,314.84
Subsequent to leasing his farm to Mr. Cox, petitioner lent Mr. Cox 968 bushels of wheat for seed. On March 30, 1973 petitioner sold that part of his 1972 wheat crop which he had stored with Wilson Creek for a gross amount of $ 26,881.89. On July 14, 1973, Mr. Cox returned the 968 bushels he had borrowed to the Wilson Creek storage facility for deposit to petitioner's account. Petitioner sold this wheat on July 23, 1973 for a gross price of $ 3,097.60. During his years *457 as a farmer and in the ordinary course of his business of farming, petitioner became a member of various farmer's cooperative associations. From time to time these cooperatives would issue dividends to their members which represented, at least in part, rebates to them based on the amount of wheat the cooperative had handled, stored and/or insured. In 1973 petitioner received cooperative dividends totaling $ 2,176. [3]
On April 27, 1972 petitioner bought a Calkins weeder (weeder) for a total cash price of $ 5,785. Petitioner paid $ 1,500 cash down, was allowed $ 3,074.25 for the trade-in of old weeders, and assumed a liability of $ 1,210.75. The old weeders which petitioner turned in had adjusted bases totaling$ 42. For his taxable year 1970, petitioner claimed an obsolescence loss of $ 4,535 which was disallowed by respondent on audit. In lieu of this obsolescence loss, respondent allowed petitioner an additional $ 1,039 of depreciation in 1970. As a result of these adjustments petitioner is entitled to an additional $ 3,495 of depreciation on, or basis in, the farm equipment sold *458 with the farm on February 15, 1973. Petitioner's amended return for his taxable year 1973 relates to this adjustment. OPINION This case involves a variety of adjustments made by respondent to petitioner's income for his 1972-1973 calendar years. We have read carefully the various motions petitioner filed with us and have considered carefully all the various arguments raised or hinted at therein. We have studied the theories contained in petitioner's Judicial Notice in re: Tax Year 1972 Only, and his Judicial Notice in re: Tax Year 1973 Only, which we accepted as his briefs. Having observed petitioner and his tax preparer at the trial of this matter, we believe it appropriate to comment, sadly, that petitioner has been the victim of horrendous advice. Despite efforts by the Court, in and out of the courtroom, to get petitioner to address himself to the substantive issues at hand, petitioner produced virtually no relevant evidence while his advisor raised legal questions which ranged from the ridiculous to the frivolous and distorted case holdings beyond rationality. Based upon the record in this case we have no choice but to hold for respondent on all issues. On March 30, 1973 petitioner *459 sold that part of his 1972 wheat crop he had stored at Wilson Creek for a gross price of $ 26,881.89. On July 23, 1973 the 968 bushels of wheat petitioner had lent to Mr. Cox were sold by petitioner for a gross price of $ 3,097.60. During 1973 petitioner received cooperative dividends of $ 2,176. Petitioner reported the proceeds of his 1973 wheat sales as long term capital gain. In this Court, he relies on section 1236 [4] as authority for so doing. In the alternative petitioner claims that, inasmuch as subsequent to 1972 he sold his farm and discontinued the trade or business of being a farmer, he changed his intent with respect to the stored wheat so that in 1973 he held the wheat for investment only and not for sale in the ordinary course of his trade or business. *460 We fail to see what relevance section 1236, relating to dealers in securities, has to petitioner's situation. Further, while it is perhaps theoretically possible for a wheat farmer to produce and hold wheat for investment, the quantum of proof which would need be adduced to prove such investment intent has not been met here. Indeed, we can find no credible evidence at all in the record which would justify a finding by this Court that petitioner held his stored wheat for investment. Petitioner makes much of the case of Malat v. Riddell,383 U.S. 569 (1966). That case held simply that the word "primarily", as it is used in section 1221(1), means "of first importance" or "principally". Malat v. Riddell,supra at 572. In other words, petitioner was required to show that the grain which he had clearly grown and stored in the ordinary course of his trade or business of farming was not held "principally" for sale in the ordinary course of this business as of its sale date. We can find no evidence that the 1973 grain sales were not transactions carried out in the ordinary course of petitioner's trade or business of farming. No credible evidence *461 was produced which would indicate that petitioner at any time had an investment intent with respect to the grain. Petitioner emphasizes that he sold his farm in 1972 and did no actual farming in 1973. However, it is petitioner's status when he earned the income, not when he received it, that is determinative. If the income was generated by petitioner's trade or business, then it is irrelevant that its receipt occurred in a year when petitioner had no trade or business. While petitioner's status may have changed, the income's character did not. Petitioner cannot change the grain he grew and stored in the ordinary course of his trade or business of farming into a capital asset merely by holding that grain for over 6 months.See United States v. Bondurant,245 F.2d 265, 267 (6th Cir. 1957). [5] We therefore, hold that petitioner has failed to meet his burden of proof on this issue and find that petitioner's gain from the sale of his stored grain in 1973, and his crop dividends for that year, were ordinary income derived by him in the ordinary course of his trade or business of farming. Such income is subject to a self-employment tax. Sections 1401 and 1402(a), *462 (b) and (c). Next we consider the gain petitioner reported on the sale of his ranch. Petitioner sold his ranch on February 15, 1973 for $ 135,000. A closing statement approved by petitioner and dated February 15, 1973 was included in the record. That closing statement allocated $ 113,000 of the purchase price to the farm's land and $ 22,000 to its machinery. On his return for his calendar year 1973, however, petitioner allocated only $ 20,345 of the sale price to the equipment. Since this amount was exactly equal to petitioner's basis in the machinery he reported no gain thereon. Petitioner has offered us no plausible reason why the allocation he actually agreed to should not be recognized for tax purposes. We, therefore, approve respondent's adjustments with respect thereto. Next we come to petitioner's correct basis in the weeder he purchased during 1972. The weeder had a retail price of $ 5,785. Petitioner claimed this full amount as his basis in the machine. To acquire this new weeder petitioner traded *463 in old weeders whose adjusted bases totaled $ 42, paid $ 1,500 in cash, and assumed a debt of $ 1,210.75. Petitioner was allowed a trade-in allowance on the old weeders of $ 3,074.25. Petitioner's total basis in the new weeder is, therefore, clearly $ 42 + $ 1,500 + $ 1,210.75 or $ 2,752.75. Section 1.1031(d)-1(a), -2, Income Tax Regs. Finally, respondent made a variety of adjustments with respect to petitioner's allowable farm expenses for the years in issue. These adjustments related to claimed interest expenses, an investment credit and investment credit recapture, and depreciation recapture. Petitioner introduced no evidence on these adjustments and we therefore confirm respondent's adjustments in full. Welch v. Helvering,290 U.S. 111, 115 (1933), Rule 142(a), Tax Court Rules of Practice and Procedure.
Decision will be entered under Rule 155. Footnotes
1. We note that, in one of the plethora of papers filed by petitioner with this Court, petitioner alleged that he signed the stipulation of facts herein "under a condition of duress and fear". We can find no evidence from the record that petitioner signed the stipulation under coercion.↩
2. By letter dated January 26, 1979, after this case was submitted for decision, petitioner notified the Court that he had: (1) deducted the $ 428 amount on his calendar year 1978 return, and (2) was also claiming a $ 235 credit against his 1978 taxes in respect of this refund claim.↩
3. This amount includes $ 162 petitioner received as a "1972 Federal Gas Tax Credit."↩
4. SEC. 1236 DEALERS IN SECURITIES (a) Capital Gains.--Gain by a dealer in securities from the sale or exchange of any security shall in no event be considered as gain from the sale or exchange of a capital asset unless-- (1) the security was, before the expiration of the 30th day after the date of its acquisition, clearly identified in the dealer's records as a security held for investment * * * and (2) the security was not, at any time after the expiration of such 30th day, held by such dealer primarily for sale to customers in the ordinary course of his trade or business.↩
5. Unlike petitioner, Mr. Bondurant had at all times maintained records and done acts which clearly separated his "investment" cotton from his "business" cotton.↩