JAMES B. KELLEY AND LENA S. KELLEY, HUSBAND AND WIFE, PETI-TIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
JOHN WALTMAN AND DORIS WALTMAN, HUSBAND AND WIFE, PETI-TIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64133, 64134.    Filed April 17, 1959.

*William R. Frazier, Esq.*, for the petitioners.
*Henry C. Stockell, Jr., Esq.*, for the respondent.

---

142

# 146

OPINION.

KERN, *Judge:* The question to be resolved in these cases is whether the corporation, Island Shores, Inc., was a collapsible corporation in 1952 as that term is defined in section 117(m)(2)(A) of the Internal Revenue Code of 1939 [1] and therefore the gain realized by petitioners from the sale of its stock in that year is to be considered as gain from the sale of property which is not a capital asset pursuant to the provisions of section 117(m)(1). [2]

Petitioners' argument may be summarized as follows: (1) They did not have any intention of causing the corporation to be formed

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(m) COLLAPSIBLE CORPORATIONS.—

\*      \*      \*      \*      \*      \*      \*

(2) DEFINITIONS.—

(A) For the purposes of this subsection, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, for the purchase of property which (in the hands of the corporation) is property described in subsection (a)(1)(A), or for the holding of stock in a corporation so formed or availed of, with a view to—

(i) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, prior to the realization by the corporation manufacturing, constructing, producing, or purchasing the property of a substantial part of the net income to be derived from such property, and

(ii) the realization by such shareholders of gain attributable to such property.

[2] (1) TREATMENT OF GAIN TO SHAREHOLDERS.—Gain from the sale or exchange (whether in liquidation or otherwise) of stock of a collapsible corporation, to the extent that it would be considered (but for the provisions of this subsection) as gain from the sale or exchange of a capital asset held for more than 6 months, shall, except as provided in paragraph (3), be considered as gain from the sale or exchange of property which is not a capital asset.

or availed of with a view to the sale of their stock prior to the realization by the corporation of a substantial part of the net income to be derived from its property; (2) the sale of their stock in 1952 was caused by circumstances arising after the purchase and development of the corporation's property and therefore, under the provisions of Regulations 111, section 29.117–11(b), section 117(m) is inapplicable; and (3) their sale of the corporation's stock occurred not prior to but after "the realization by the corporation * * * purchasing the property of a substantial part of the net income to be derived from such property," and therefore the corporation is not to be considered a collapsible corporation as defined in section 117(m)(2)(A).

With regard to the first contention of petitioners, respondent argues that it is not supported by the facts and that under the interpretation of the statute made in *Burge* v. *Commissioner*, 253 F. 2d 765, affirming 28 T.C. 246, the contention is without merit. See also *Glickman* v. *Commissioner*, 256 F. 2d 108; *Rose Sidney*, 30 T.C. 1155.

With regard to the second contention of petitioners, respondent argues that it is not supported by the facts.

With regard to the third contention of petitioners, respondent makes the following argument: [3]

Although recognizing that in the "requirement that the sale of stock be prior to the realization by the corporation of a substantial part of the net income to be derived from the property," "the statute merely says 'substantial' and it does not state any arbitrary percentage, making it obvious that substantial realization is a relative term which is to be judged in each case on its own facts," and that "what constitutes substantial realization of net income to be derived from the property requires both statutory interpretation and a factual determination," "it is respondent's contention that a taxpayer has not realized a substantial part of the net income to be derived from the property if at the time of the stock sale there remains a substantial part of the net income yet to be derived from the property," and that the corporation in these cases "did not realize a substantial part of the net income from the property, if at the time of the stock sale there remained a substantial part of the net income yet to be derived from the property." Respondent also makes the observation that "[i]n providing the 'substantial realization test' in the statute, Congress was obviously [?] trying to except from its effect only those corporations which had realized *substantially all* of their net income and had paid the tax due on it."

With regard to this observation by respondent (which is really the keystone in his argument), we can only make our own observation that if Congress had intended to exclude from its definition of "col-

---

[3] The quotations used in the summary are from respondent's brief.

lapsible corporation" only a corporation which had realized substantially all of the net income to be derived from its property, it could and would have said so instead of saying as it did "the realization by the corporation * * * of a substantial part of the net income to be derived from such property." We are unaware of any principle of statutory construction which would warrant the conclusion that the words "substantial part" are equivalent to the words "substantially all."

The implications of respondent's argument on this point are somewhat startling. On the assumption that 50 per cent of "the net income to be derived from such property" constitutes "a substantial part" of such income and that 50 per cent of such income remained "yet to be derived from the property," the corporation owning the property producing the income must be considered a "collapsible corporation" even though 50 per cent of the income from the property had been realized prior to the sale. In other words, since 50 per cent of the income from the property was unrealized at the time of the sale of the stock and this constituted a considerable part of such income, it would follow from this argument that the 50 per cent of the income from the property realized prior to the sale could not be a substantial part of the income to be derived from such property. Even more startling would be the implication from this argument on the assumption that 40 per cent of such income was "a substantial part." It would follow that if 40 per cent of the net income to be derived from the property of the corporation was unrealized at the time of the sale of its stock, the realization of 60 per cent of such income prior to the sale of the stock would not be the realization of a substantial part of such net income.

Obviously the fallacy in this argument is the assumption that there can only be one "substantial part" of a whole.[4]

Respondent's argument on this point is foreshadowed by a paragraph in his regulations.

In Regulations 118, section 39.117(m)–1(d)(2), it is correctly stated that one of the facts which will ordinarily be considered sufficient to establish that a corporation is a collapsible corporation is the fact that "(v) at the time of the sale, exchange, or distribution described in subdivision (i) of this subparagraph, the corporation which manufactured, constructed, produced, or purchased such property has not realized a substantial part of the net income to be derived from such property." However, in section 39.117(m)–1(d)(3) of the same regulations, a different phraseology is used in stating the facts which will

[4] In these cases it is our opinion that the "whole" to which the term "substantial part" applies is the net income to be derived from the property from the time of its purchase to the time of its sale by the purchasers of the corporation's stock.

ordinarily be sufficient to establish that a corporation is not a collapsible corporation. That portion of the regulations reads as follows:

(ii) In the case of a corporation subject to the rules of subparagraph (2) of this paragraph with respect to the manufacture, construction, or production (either by the corporation or by another corporation the stock of which is held by the corporation) of property, the amount of the unrealized net income from such property is not substantial in relation to the amount of the net income realized (after the completion of a material part of such manufacture, construction, or production, and prior to the sale, exchange, or distribution referred to in subparagraph (2)(i) of this paragraph) from such property and from other property manufactured, constructed, or produced by the corporation.

Respondent points to the language of one case as judicial authority for his argument on this question. In *J. D. Abbott*, 28 T.C. 795, we were concerned with the question of whether "only the property actually sold by the corporation can be regarded as giving rise to the income from the transaction" or whether the enhancements in value to the property arising from commitments made by the corporation but carried out by the stockholders after its dissolution could also be considered. Having resolved this question, we found as a conclusion of fact that "[w]hen Leland [the corporation] distributed the land to petitioners [the stockholders], it had not realized a substantial part of the net income to be derived from the property." In that case the "part of the net income to be derived from the property" which had been realized by Leland at the time of its dissolution was approximately 10 per cent of such income. Therefore, we inferentially held in that case that 10 per cent of the net income to be derived from the property was not a substantial part thereof. However, on appeal, the Court of Appeals in affirming us (258 F. 2d 537) considered that our finding that the corporation "had not realized a substantial part of the net income to be derived from the property" was equivalent to a finding that "the dissolution [of the corporation] took place before a substantial part (nearly 90%) of the total profit was realized." In the course of its opinion, the court used the following language:

The real question posed by the statute, however, is not whether a substantial part of the total profit was realized prior to dissolution, but rather whether that part of the total profit realized *after* dissolution was substantial. This was the test correctly applied by the Tax Court in making its finding that the dissolution took place before a substantial part (nearly 90%) of the total profit was realized.

With all due deference to the Court of Appeals for the Third Circuit, we were not aware that we made the finding and applied the test referred to in the above quotation. The matter being now squarely before us, it is our opinion that the question posed by the statute is, to quote the statute itself, whether there was "a view to—

(i) the sale * * * of stock by * * * shareholders * * * *prior to the realization by the corporation* * * constructing * * * or purchasing the property *of a substantial part of the net income to be derived from such property.*" (Emphasis supplied.) Put more succinctly, it is our opinion that the question to be decided is whether the *realized* income is a substantial part of the net income to be derived from the property and not whether the *unrealized* income is a substantial part of such net income. See *Rose Sidney, supra* at 1163. It is our further opinion that there may be two (or more) substantial parts of a whole, and therefore a finding that the unrealized part of such net income is substantial does not preclude a finding that the realized part of such net income is substantial.

This conclusion is in harmony with the legislative history of the statute here involved. In S. Rept. No. 2375, 81st Cong., 2d Sess., the Finance Committee stated with regard to the proposed section 117(m): "The corporation [i.e., the "collapsible corporation"], furthermore, has been so defined as to describe corporations different in kind from those which ordinarily liquidate *following normal business operations*. This objective has been specifically strengthened by the statement made in subparagraph (i) above [sec. 117(2)(A)(i)], to the effect that the sale or exchange or the distribution be made prior to the realization *by the corporation* of a substantial part of the net income to be derived from the property." (Emphasis supplied.) See also Report No. 2319, House of Representatives, 81st Cong., 2d Sess., where the report of the Ways and Means Committee contains the same language. This would indicate to us the legislative intent that when a corporation has itself realized by reason of its own normal business operations a substantial part of the net income to be derived from its property, and a sale or exchange of its stock takes place *after its* realization of a substantial part of such net income, the corporation is not to be considered a "collapsible corporation."

Accordingly, we come to the question of whether under the facts of the instant cases the sale of the stock by petitioners was "prior to the realization by the corporation * * * constructing * * * or purchasing the property of a substantial part of the net income to be derived from such property." This involves a determination by us of what constitutes "a substantial part." In this connection the views of Judge Lynne in *Levenson* v. *United States*, 157 F. Supp. 244, are worthy of quotation. In that case he said:

No definition of "substantial" appears in the collapsible section or elsewhere in the Revenue Act of 1939. Nor does the legislative history of Section 117(m) shed any light on its intended scope. Cases dealing with the meaning of this adjective in the context of the National Labor Relations Act, the Fair Labor Standards Act, and the Bankruptcy Act afford little or no guidance.

It ill becomes this court to criticize the language employed by the Congress in drafting a Revenue Act. It is quite easy to observe after the event has occurred that in lieu of "substantial" the Congress might have employed a percentage to express its true meaning. However, this court has been impressed time and again more often with the excellence of legislative draftsmanship than with its deficiencies.

It is to be expected that the word "substantial" as used in the phrase "substantial part of the net income" will continue to be a cause of interpretative difficulty. Its counterpart is found in the Revenue Act of 1954 (26 U.S.C.A. § 341(b)(1)(A)) in the phrase "a substantial part of the taxable income." The regulations promulgated by the Treasury Department both under the 1939 Act as amended and under the 1954 Act go so far in one place as to suggest that until the yet unrealized income from property is insubstantial in relation to the income that has been realized, the realization may not be regarded as having been a substantial part of the net [taxable] income.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

It would appear that the problem is one for the Congress to resolve by amendment to provide a clear and adequate definition of its concept of "substantial." The disagreeable alternative is to leave the matter for definition by the courts and local tax officials on an ad hoc basis in each case.

Under the facts presented by that case and giving to the word "substantial" its ordinary meaning as "[c]onsiderable in amount, value, or the like; large; as, a substantial gain," it was decided that the realization of slightly more than 50 per cent (51.37 per cent) of the net income from the property was substantial.

As we said in *Rose Sidney, supra* at 1163, "In determining what is 'a substantial part of the net income to be derived from such property' we must consider the relationship between the net income realized by the corporations prior to the distributions and the whole of the net income which may be reasonably anticipated to be derived from such property." It is obvious that in many cases (as in the cited case) the amount of "the whole of the net income which may be reasonably anticipated to be derived from such property" must be an approximation. In the instant cases the approximation can be close to the absolute amount since the property was liquidated within 3 years subsequent to the sale of the stock. However, there must still be some approximation since we are concerned not with gross receipts but with net profits. It would not, in our opinion, be within the legislative intent of the statute for "the whole of the net income which may be reasonably anticipated to be derived from such property" to be measured by two different bases or two different accounting systems. Stated another way, it is our opinion that "the whole of the net income which may be reasonably anticipated" must be approximated as of the date of the sale or exchange of the corporation's stock on the assumption that the cost basis and accounting method used by the corporation in measuring its net income from the property at that time will remain static.

Turning to the facts of the instant cases, it appears that the total net income reported by the corporation for the periods prior to the sale of its stock was $48,112.47 while the total net income reported by the purchasers for the periods subsequent to the sale of the stock was $32,756.99. If we accepted these figures as representing in their aggregate the total "net income to be derived from" the property constructed or purchased by the corporation, it is obvious that considerably more than 50 per cent of such income had been realized prior to the sale of the stock. However, these figures are misleading in at least two respects. In the first place, on account of the purchase price paid to petitioners for their stock, the purchasers had a greater cost basis with regard to the property than did the corporation and consequently realized a smaller amount of net income from their sales of the property than the corporation would have realized. To some extent the purchase price for the stock received by petitioners represented a discount of net income which might reasonably be anticipated from the property. In the second place, the deductions taken by the corporation from gross income in determining net income included deductions in considerable amounts for "Compensation of officers" and "Salaries and wages." No such deductions were taken by the purchasers after the sale of the stock. Thus the "Cost of lots sold" by the purchasers in the years 1952, 1953, and 1954 was greater than it would have been had the corporation retained the ownership of the property and the expenses deducted by them from gross income were less than the expenses deducted by the corporation. These circumstances indicate the practical necessity of approximating "the whole of the net income which may be reasonably anticipated" as of the time of the sale or exchange of the stock of the corporation using the basis and accounting methods actually used at that time.

Proceeding on this reasoning, we have determined that the corporation had realized prior to the sales of its stock here in question one-third of the net income to be derived from the property constructed or purchased by it.

Thus we reach the crucial question of whether one-third of such income is a substantial part thereof. In *J. D. Abbott, supra*, we held that one-tenth was not a substantial part. In *Levenson* v. *United States, supra*, it was held that approximately one-half was a substantial part. Approaching the problem in the same manner as that in which the court approached it in the *Levenson* case, by giving to the word "substantial" its ordinary "dictionary" meaning as "[c]onsiderable in amount, value, or the like; large; as, a substantial gain," we are of the opinion that one-third is a substantial part.

Accordingly, we conclude that the corporation here involved was not a collapsible corporation in that it was not formed or availed of

with a view to the sale or exchange of its stock by its shareholders prior to the realization by the corporation of a substantial part of the net income to be realized from its property.

This conclusion based upon petitioners' third argument requires a decision of the issue presented by the pleadings in favor of the petitioners, and therefore it is unnecessary for us to consider their other contentions.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

DRENNEN, *J.*, concurs in the result.

OPPER, *J.*, dissenting:

*I.*

The primary question is the meaning to be attributed to "prior to" realization as applied to sales or liquidations in order to determine whether a corporation is "collapsible." It is by no means clear to me that the interpretation now being employed is so "obvious."

In the phrase "prior to the realization by the corporation * * * of a substantial part of the net income to be derived," the liquidation or sale represents a point of time as of which we are required to inspect the entire income-producing history of the corporation. The words "to be derived" mean "which has been, and remains to be," derived. So much the present opinion accepts.

Dealing with the bare language of the statute, that point of time could hence as readily be intended to mean "while a substantial part remains unrealized," or to be realized, as to carry the construction now being given it which is "until after a substantial part has been realized" regardless of the fact that a substantial—indeed a much greater—part still remains to be realized.

Granting then that the language of the statute is wholly ambiguous, what guides do we have for construing it? First, the legislative purpose which was to prevent transformation of "substantial" amounts of ordinary income into capital gain [1] could be frustrated by the present construction. Second, the Commissioner's regulations, which are certainly not unreasonable, forbid it. And third, the only appellate court which has spoken, clearly views the critical words as meaning the opposite of what is now being accepted. *Abbott* v. *Commissioner*, (C.A. 3) 258 F. 2d 537, affirming 28 T.C. 795. And this was not a reversal of a Tax Court opinion but its affirmance. Cf. *Arthur L. Lawrence*, 27 T.C. 713, revd. (C.A. 9) 258 F. 2d 562.

---

[1] "The collapsible corporation is a device whereby one or more individuals attempt to convert the profits from their participation in a project from income taxable at ordinary rates to long-term capital gain taxable only at a rate of 25 percent." H. Rept. No. 2319, 81st Cong., 2d Sess. (1950), p. 96; 1950-2 C.B. 449.

154

It is necessary to emphasize that the present assumption is that the corporation was "formed or availed of" *"with a view to"* the results which were achieved. (Emphasis added.) In other words, we are now saying that even though the purpose with which petitioners were acting was to terminate their relationship with the corporation at a time when a substantial amount of the prospective income was yet unrealized, the statute was not intended to apply to them. This is an open invitation to calculated schemes of avoidance, which it is difficult to believe Congress intentionally and purposely proffered.

## II.

But even if that interpretation of the language is correct, it is still necessary to consider whether in the context of the legislative purpose anything less than half of the total net income should be considered as "substantial." In the only cited case dealing with the subject, more than 50 per cent of the amount to be realized had been received as ordinary income. *Levenson* v. *United States*, (N.D. Ala.) 157 F. Supp. 244. This might well be the smallest proportion of the total which should be treated as a sufficient "view" to avoid the application of the section. But we are now holding that as little as one-third is sufficient, with two-thirds successfully converted into capital gain.

MURDOCK, HARRON, RAUM, and FORRESTER, *JJ.*, agree with this dissent.