GEORGE W. DAY AND MURIEL E. DAY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5684–67.   Filed November 2, 1970.

*Harold M. Everton* and *Frank E. Clohan*, for the petitioners.
*Leo A. McLaughlin*, for the respondent.

### OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioners' income tax for 1963 in the amount of $344,639.04. The only issue is whether Day Enterprises, Inc., was a collapsible corporation within the meaning of section 341[1] at the time of its liquidation, so that the gain realized by petitioners on the liquidation is taxable as ordinary income rather than capital gain.

All of the facts are stipulated.

George W. Day (hereinafter petitioner) and Muriel E. Day, husband and wife, filed a joint Federal income tax return for 1963 with the district director of internal revenue, San Francisco, Calif. They were legal residents of Saratoga, Calif., at the time they filed their petition.

Day Enterprises, Inc. (hereinafter Enterprises or the corporation), incorporated on June 4, 1957, was engaged in the development of sub-

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

divided lots, the construction of houses thereon, and the sale of improved lots. The corporation was liquidated as of May 29, 1963, and all of its assets and liabilities were distributed to petitioner, its sole shareholder.

Prior to its liquidation, Enterprises had developed three separate projects which were either complete or partially complete at the time of the liquidation as follows:

|  | Westview project | Aloha project | Glenview project |
|---|---|---|---|
| Total units | 39 | 45 | 95 |
| Sold prior to liquidation | 39 | 42 | 53 |
| Units distributed | 0 | 3 | 42 |
| Taxable income realized prior to liquidation | $45,402.33 | $174,558.27 | $279,408.79 |

Within each project all lots had a relatively equal cost and value; accordingly, at the time of its liquidation, the corporation had already realized 100 percent, 93 percent, and 56 percent of the taxable income to be derived from the Westview, Aloha, and Glenview projects, respectively. A projection of the corporation's profit experience reflects that additional taxable income in the respective amounts of $12,467.98 and $221,418.29 remained to be realized from the Aloha and Glenview projects when the corporation was liquidated.

In their 1963 income tax return, petitioners reported $524,546.81 as long-term capital gain; this was the difference between the amount distributed in liquidation of Enterprises ($534,546.81) and petitioner's basis in the stock ($10,000). Respondent determined that such difference was ordinary income on the ground that it was received as a distribution in liquidation of a "collapsible corporation" within the meaning of section 341.

In certain circumstances, section 341 requires gain which would otherwise be taxed to the shareholder as long-term capital gain to be reported as ordinary income. The applicability of this requirement in the instant case depends on whether Enterprises was a "collapsible corporation" at the time it was liquidated. The term "collapsible corporation" is defined by section 341(b)(1).[2] Under that section, a corporation is collapsible if it was "formed or availed of principally

---

[2] SEC. 341. COLLAPSIBLE CORPORATIONS.

(b) DEFINITIONS.—

(1) COLLAPSIBLE CORPORATION.—For purposes of this section, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property, for the purchase of property which (in the hands of the corporation) is property described in paragraph (3), or for the holding of stock in a corporation so formed or availed of, with a view to—

(A) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, before the realization by the corporation manufacturing, constructing, producing, or purchasing the property of a substantial part of the taxable income to be derived from such property, and

(B) the realization by such shareholders of gain attributable to such property.

for the manufacture, construction, or production of property * * * with a view to * * * a distribution to its shareholders [in a liquidation], before the realization by the corporation * * * of a substantial part of the taxable income to be derived from such property."

The controversy here centers on the meaning of the "substantial part" provision of this definition. Petitioner argues that "a substantial part" means the part already realized, and respondent contends that it means the part not yet realized. The parties agree that the status of the Glenview project—from which 56 percent had been, and 44 percent remained to be, realized[3]—controls the decision as to whether Enterprises was a collapsible corporation at the time of its liquidation.

On at least two prior occasions, this Court has rejected the interpretation of section 341(b) here advocated by respondent. In *James B. Kelley*, 32 T.C. 135 (1959), we held that a corporation was not a collapsible one where it had realized 33 percent of the income to be derived from its property prior to the sale of its stock. We concluded that the test of the statute is whether, on the crucial date, the corporation itself has realized a substantial part of the taxable income to be derived from the property—not whether a substantial part remains to be realized. Affirming our decision in an opinion thoroughly analyzing the problem, the Court of Appeals concluded that our interpretation "more naturally conveys the ordinary meaning of the words as they are written in the statute." *Commissioner* v. *Kelley*, 293 F. 2d 904, 907 (C.A. 5, 1961).

Four years later, we again had the question before us, and we followed the opinions in *Kelley;* the Court of Appeals affirmed, stating that our interpretation of the statutory language and that of the Court of Appeals in *Kelley* was the "more plausible" one. *Commissioner* v. *Zongker*, 334 F. 2d 44, 46 (C.A. 10, 1964), affirming per curiam 39 T.C. 1046 (1963). Other courts have also rejected respondent's interpretation in favor of one "more in keeping with [the statute's] language rather than its assumed purpose." *Winn* v. *United States*, 243 F. Supp. 282, 290 (W.D. Mo. 1965) ; *Levenson* v. *United States*, 157 F. Supp. 244 (N.D. Ala. 1957).

---

[3] Sec. 1.341–2(a)(4), Income Tax Regs., is as follows :

The property referred to in section 341(b) is that property or the aggregate of those properties with respect to which the requisite view existed. In order to ascertain the property or properties as to which the requisite view existed, reference shall be made to each property as to which, at the time of the sale, exchange, or distribution referred to in section 341(b) there has not been a realization by the corporation * * * of a substantial part of the taxable income to be derived from such property. However, where any such property is a unit of an integrated project involving several properties similar in kind, the determination whether the requisite view existed shall be made only if a substantial part of the taxable income to be derived from the project has not been realized at the time of the sale, exchange, or distribution, and in such case the determination shall be made by reference to the aggregate of the properties constituting the single project.

In both *Kelly* and *Zongker*, careful consideration was given to the arguments here presented by respondent. It is true that *Abbott* v. *Commissioner*, 258 F. 2d 537, 542 (C.A. 3, 1958), affirming 28 T.C. 795 (1957), contains some language which tends to support respondent's position. That language, however, was apparently based on a misunderstanding of this Court's opinion in the *Abbott* case; it was carefully considered by both this Court (*James B. Kelley, supra* at 150–151) and the Court of Appeals (*Commissioner* v. *Kelley, supra* at 909–911) in the *Kelley* opinions, and was found insufficient to warrant adoption of the position here advocated by respondent. On its merits, the *Abbott* opinion is inapposite, for it involved a situation where only about 10 percent of the taxable income to be derived from the property had been realized at the time the corporate stock was sold. Nor do we think section 1.341–5(b)(5), Income Tax Regs., justifies adoption of respondent's interpretation of the section. See *James B. Kelley, supra* at 148–149.

Respondent's suggestion that we should stretch the ordinary meaning of the words as they are written in the statute in order to better carry out the purpose of the statute has been uniformly rejected. *Commissioner* v. *Kelley, supra* at 912–913; *Commissioner* v. *Zongker, supra; James B. Kelley, supra* at 150–151; *Winn* v. *United States, supra* at 290; *Levenson* v. *United States, supra* at 250–251.

Having carefully reviewed our prior opinions on this issue, we adhere to their authority. The 56 percent of taxable income realized from the Glenview project prior to the liquidation was clearly substantial and, therefore, Enterprises was not a collapsible corporation.

*Decision will be entered for the petitioners.*