Estate of C. A. Diecks, Deceased, Moninda Diecks Coyle, Executrix, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 1398-72.     Filed October 23, 1975.

*D. Michael Coyle,* for the petitioner.
*Christopher Rhodes,* for the respondent.

120

122

OPINION

## 1. *Collapsible Corporation Issue*

Respondent contends that Cable Vista was a collapsible corporation within the meaning of section 341,[2] and therefore that Diecks' gain on the sale of the Cable Vista stock is taxable as ordinary income rather than long-term capital gain. Petitioner argues that Cable Vista was not a collapsible corporation when Diecks sold his stock therein, and that if it were, the corporation came within the exception from application of the collapsible provisions provided in section 341(e)(1).

Section 341(a) provides that gain from the sale of stock of a collapsible corporation shall be considered as gain from the sale of property which is not a capital asset. Section 341(b) to the extent here relevant generally defines a collapsible corporation to mean a corporation that is formed or availed of principally for the production of property with a view to a sale or exchange of stock before it has realized a substantial part of the taxable income to be derived from that property, and a realization by the shareholders of the gain attributable to that property.[3] To be

---

[2] All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

[3] Sec. 341 provides in relevant part:

(b) DEFINITIONS.—

(1) COLLAPSIBLE CORPORATION.—For purposes of this section, the term "collapsible corporation" means a corporation formed or availed of principally for the manufacture, construction, or production of property * * * with a view to—

(A) the sale or exchange of stock by its shareholders (whether in liquidation or otherwise), or a distribution to its shareholders, before the realization by the corporation manufacturing, constructing, [or] producing * * * the property of a substantial part of the taxable income to be derived from such property, and

(B) the realization by such shareholders of gain attributable to such property.

(2) PRODUCTION OR PURCHASE OF PROPERTY.—For purposes of paragraph (1), a corporation shall be deemed to have manufactured, constructed, produced, or purchased

"formed or availed of" for the proscribed purpose, it is not necessary that the stockholders be motivated by tax considerations. *Braunstein v. Commissioner*, 374 U.S. 65 (1963).

Petitioner concedes Cable Vista was formed or availed of principally for the manufacture, construction, or production of property, and we agree. Cable Vista was continuously involved in "manufacture, construction, or production of property" in that it was continuously in the process of laying cables and acquiring and connecting new customers to its system. The creation of both tangible property (the cable system) and intangible property (such as franchises and goodwill) are within the reach of section 341. *Computer Sciences Corp.*, 63 T.C. 327, 346-347 (1974); *FTS Associates, Inc.*, 58 T.C. 207 (1972).

Petitioner argues that section 341 is inapplicable to a business where production is continuous, but cites no authority, nor do we know of any, that would support this proposition.

While petitioner concedes that Cable Vista was formed or availed of principally for the production of property, petitioner argues that Cable Vista's shareholders did not have the requisite "view" to effect a sale before the corporation had realized a substantial part of the income to be derived from its property. The regulations provide that the shareholders have the requisite view if such a sale "was contemplated, unconditionally, conditionally, or as a recognized possibility." Sec. 1.341-2(a)(2), Income Tax Regs. The regulations also provide that the collapsible view exists if formed at some time during construction, production, or purchase of the collapsible property. See *FTS Associates, Inc.*, 58 T.C. at 212. Since production was continuous in this case, the requisite view was held by the shareholders at the time of sale.

The shareholders sold their stock before Cable Vista realized a substantial part of the taxable income from the produced property. *James B. Kelley*, 32 T.C. 135 (1959), affd. 293 F. 2d

property, if—
    (A) it engaged in the manufacture, construction, or production of such property to any extent,
    (B) it holds property having a basis determined, in whole or in part, by reference to the cost of such property in the hands of a person who manufactured, constructed, produced, or purchased the property, or
    (C) it holds property having a basis determined, in whole or in part, by reference to the cost of property manufactured, constructed, produced, or purchased by the corporation.

904 (5th Cir. 1961). Indeed, petitioner did not argue otherwise in view of the fact Cable Vista realized no taxable income at all prior to the sale of the stock. Finally, the shareholders realized gain attributable to the produced property upon the sale of the Cable Vista stock. Consequently, Cable Vista came within the definition of a collapsible corporation in section 341(b) at the time Diecks sold his shares in the corporation.

However, we conclude that Diecks' gain on the sale of his stock is not taxable as ordinary income because Diecks comes within the relief from section 341(a) provided in section 341(e). Section 341(e) was enacted to prevent section 341(a) from converting gain, which would have been taxable as capital gain if the property had been held in the shareholder's hands, into ordinary gain because a corporate structure was employed. S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 922, 952. Generally speaking, the collapsible corporation provisions are inapplicable if the net unrealized appreciation in the corporation's "subsection (e) assets" amounts to less than 15 percent of the corporation's net worth.

In this case the "subsection (e) assets" include property which was neither a capital asset nor section 1231(b) property in the corporation's hands.[4] The only assets which were neither a capital asset nor a section 1231(b) asset were the subscription contracts in effect. These represented the right to earn income for services rendered or to be rendered for the duration of the contract. *United States v. Bidson*, 310 F. 2d 111 (5th Cir. 1962); *King Broadcasting Co.*, 48 T.C. 542 (1967). See also *Commissioner v. P. G. Lake, Inc.*, 356 U.S. 260 (1958). There was no unrealized appreciation in the contracts. The expectation of renewal of the contract represented the expectation that a customer would return, and was a capital asset in the nature of goodwill, if any. *Nelson Weaver Realty Co. v. Commissioner*, 307 F. 2d 897, 901 (5th Cir. 1962), revg. and remanding in part and affg. in part 35 T.C. 937 (1961); *Charles W. Miller*, 56 T.C. 636, 649 (1971).

The transmitting system was a section 1231(b) asset, and the franchises were either capital assets or section 1231(b) assets (depending on whether they were depreciable).

---

[4] Since Cable Vista had no shareholders owning more than 20 percent in value of the corporation's stock, the other limitation in defining "subsection (e) assets" is not applicable.

Section 341(e)(1) makes section 341(a)(1) inapplicable to a sale or exchange of stock if the net unrealized appreciation in the corporation's "subsection (e) assets" *and* in any corporate assets which would produce ordinary income if held by Diecks, does not exceed 15 percent of the corporation's net worth. Sec. 341(e)(1)(A) and (B). Diecks is a 20-percent shareholder, and therefore must look to his own businesses to determine whether any of Cable Vista's assets would have produced ordinary income if held by him at the time of the sale of stock. Diecks was primarily in the lumber business, but also had interests in other businesses. However, he was not in another television business or any other business which would have caused the assets of Cable Vista to be ordinary income assets in his hands.

The corporation's net worth at time of sale equaled the sale price of $152,500. Sec. 341(e)(7). The net unrealized appreciation in "subsection (e) assets" (the subscription agreements) was zero (fair market value of zero over adjusted basis of zero). Sec. 341(e)(6). Therefore, the net unrealized appreciation in "subsection (e) assets" did not exceed 15 percent of the net worth of the company, and Diecks was entitled to long-term capital gain treatment with respect to the sale of his stock in Cable Vista.

In view of our decision under section 341(e), we need not reach the parties' arguments under section 341(d).

## 2. *Investment Credit Recapture*

Cable Vista was a subchapter S corporation during its taxable years ending November 30, 1963, 1964, and 1965. Diecks, as a shareholder in Cable Vista, properly claimed investment credit with respect to property acquired and held by Cable Vista. On December 1, 1965, Cable Vista terminated its subchapter S election and the next day Diecks sold his stock in Cable Vista. The parties agree that if Diecks is subject to recapture of the investment credit in 1965 the amount of that recapture is $884.33.

Generally, a taxpayer cannot claim an investment credit for property purchased by another. One exception to this general rule is that the shareholders of a subchapter S corporation can claim the credit for property purchased by the corporation. Sec. 1.48-5, Income Tax Regs. The question presented is whether Diecks must submit to recapture of part of the credit when the

subchapter S corporation revoked its subchapter S election and the next day Diecks sold his stock in the corporation. We conclude that Diecks must recapture the investment credit claimed.

Section 1.47-4(a)(2), Income Tax Regs., requires recapture by a shareholder of a subchapter S corporation when such shareholder disposes of all his stock in such company prior to the end of the estimated useful life of the investment credit property. Although these regulations were not promulgated until 1967, they have been given retroactive effect. *Charbonnet v. United States,* 455 F. 2d 1195 (5th Cir. 1972). The mere termination of the subchapter S election is not a disposition of the property. Sec. 1.47-4(d), Income Tax Regs. It is the corporation's status in the year the assets were acquired that governs who is entitled to the investment credit. Recapture by the shareholder occurs upon the sale of the stock even though the election was terminated before the disposition occurred. *Charbonnet v. United States, supra.*

*Decision will be entered under Rule 155.*

